UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

R & M INNOVATIONS LLC,

           Plaintiff and
           Counterdefendant,

    v.

ALLIANCE SALES & MARKETING MW, INC., and DOES 1 TO 20,

           Defendant and
           Counterclaimant.

No. 2:24-cv-0060 WBS AC

MEMORANDUM AND ORDER RE: THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BRIGHT PEOPLE FOODS, INC., DBA DR. MCDOUGALL'S RIGHT FOODS,

           Plaintiff and
           Counterdefendant,

    v.

ALLIANCE SALES & MARKETING MW, INC., and DOES 1 TO 20,

           Defendant and
           Counterclaimant.

No. 2:24-cv-0058 WBS AC

----oo0oo----

These now-related actions concern commercial disputes between plaintiffs and counter-defendants Bright People Foods, Inc. ("BPF"), R & M Innovations LLC ("R&M"), and defendants and counterclaimants Alliance Sales and Marketing ("Alliance"). BPF and R&M originally filed claims for breach of contract seeking declaratory relief in state court in connection with Alliance's alleged failure to perform its contractual obligations. (Docket No. 1.)  After removing to this court, Alliance filed counterclaims against plaintiffs for breach of contract and violations of the Wholesale Sales Representative Act. (Docket No. 22.)  All parties move for partial summary judgment and to exclude expert testimony. (Docket Nos. 54, 57, 62.)[1]

I.   Motions to Exclude Expert Testimony

Both plaintiffs and Alliance have moved to exclude testimony of their competing expert witnesses at trial. (Docket Nos. 59, 63.)  As explained to counsel at oral argument, the motions to exclude expert testimony will be denied without prejudice, with the parties instructed to renew their motions in accordance with the procedure which will be set forth in the Pretrial Order if they so wish.

II.  The Motions for Partial Summary Judgment

Alliance moves for summary judgment on its claims that (1) BPF and R&M materially breached the agreements, (2) those material breaches excused Alliance's performance, and (3) the

---

[1]    Plaintiffs BPF and R&M filed duplicate motions for summary judgment containing identical arguments. (See generally Docket Nos. 54, 57.)  For purposes of this order, the court will analyze the motions together.

actions of BPF and R&M constitute violations of the Wholesale Sales Representatives Act, California Civil Code Section 1738.10, et seq. (Docket No. 62 at 6.)  Plaintiffs make two threshold arguments: (1) Alliance's claims pre-dating August 2023 are barred because of limitations in Section 19 of the agreement; and (2) Alliance cannot bring claims under the Wholesale Sales Representatives Act because it does not qualify as a "wholesale sales representative."  (Docket No. 64.)

    A.    The Term "Dispute" in Section 19's First Clause

         Plaintiffs' first argument concerns the first clause of Section 19 of the agreements, which reads:  "any disputes over brokerage commissions due must be initiated within 60 days of brokerage payment for that month."  (Docket No. 54-3 at 3.) Plaintiffs argue that the term "dispute" denotes legal action and required Alliance to bring such "an action within 60 days of [a] payment or waive its right" to do so.  (Docket No. 57 at 7.) Alliance argues that plaintiffs' interpretation improperly limits the meaning of "dispute" to lawsuits. (Docket No. 70 at 12.)

         Contract interpretation is a question of law, unless "ascertaining the intent of the parties at the time the contract was executed depends on the credibility of extrinsic evidence," in which case the interpretive question is resolved by the factfinder.  City of Hope National Medical Center v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008).  Words of a contract are to be understood "in their ordinary and popular sense . . . unless used by the parties in a technical sense[.]"  Cal. Civ. Code § 1644.

         Nowhere in the agreements is the term "dispute" defined in any technical sense.  (See Docket 54-3 at 3-5.)  Plaintiffs'

3

argument that the term requires legal action is thus unsupported by the agreement, which contains no references to filing a complaint or instituting an action.  The Ninth Circuit has also understood "dispute" to "mean[] [a] conflict or controversy, esp. one that has given rise to a particular lawsuit . . . [and this] definition is not limited to court proceedings." Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd., No. 20-55439, 2021 WL 4027807, at *2 (9th Cir. 2021).

In light of the above, the court agrees with Alliance and interprets "dispute" within the meaning of Section 19 to encompass a "conflict or controversy" over commission payments, including written communications asserting that the other party is in breach of its obligations. Nomadix, Inc., 2021 WL 4027807, at *2.  The record here contains more than a dozen instances of such communications, wherein Alliance informed BPF and R&M of late payments and missing documentation, at times using urgent language suggesting that the commercial relationship was in jeopardy.  (See generally Declaration of Erik C. Olson ("Olson Decl.") (Docket No. 62-2.)  These communications fall within the meaning of the term "dispute" as used in Section 19, which defeats plaintiffs' argument at summary judgment that Alliance's claims are barred by this provision.  Accordingly, the court will not grant summary judgment in plaintiffs' favor on this basis.

B.   Section 19's Second Clause

Plaintiffs also argue that the second clause of Section 19 -- providing that "both parties agree ongoing that there are no disputes over brokerages for any sales 60 days prior to last month for which brokerage check was cashed" -- operates as an

4

independent waiver of Alliance's right to bring its claims. (Docket No. 73 at 16-17.)  Counsel for Alliance emphasized at oral argument that "there are no disputes" should be read as a prospective phrase that does not apply to disputes raised prior to the cashing of checks.

California courts disfavor interpretations that produce commercially unreasonable results or that defeat the parties' reasonable expectations.  See MacKinnon v. Truck Insurance Exchange, 31 Cal. 4th 635, 648 (2003).  The courts also favor interpretations consistent with the parties' course of performance.  See Employers Reinsurance Co. v. Superior Ct., 161 Cal. App. 4th 906, 920-21 (2008).

Plaintiffs' reading raises both concerns.  For one, it forces Alliance into the impractical choice between accepting payment on a contested commission and preserving its objections. Section 19 read this way operates as a forfeiture clause, which California courts "have rather consistently held [are] not favored in contract law and . . . should be explicitly and clearly stated."  In re Crown Corp., 679 F.2d 774, 776-77 (9th Cir. 1982); see also Cal. Civ. Code § 1442 ("A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.").  Plaintiffs' reading is also difficult to reconcile with the parties' performance, under which plaintiffs continually engaged with Alliance's commission concerns rather than treating those concerns as extinguished by payment.

Moreover, the phrase "there are no disputes" does not by its terms apply to disputes initiated before checks are

cashed.  Cf. Morse v. ServiceMaster Global Holdings, Inc., No. 10cv-0628 SI, 2012 WL 4755035, at *4 (N.D. Cal. Oct. 4, 2012) (declining to apply agreement provision retroactively because "the clause refers to the material scope of the agreement, not temporal scope" (emphasis in original)).  Read prospectively, the second clause bars the initiation of new disputes about old commissions once payment has been completed and the limitations window has closed, while leaving timely raised disputes intact.

Because Alliance's reading better accords with the commercially reasonable expectations of the parties, their performance, and the agreement's text, the court interprets the second clause of Section 19 to bar the initiation of new disputes about commissions after a check is cashed, but not to extinguish prior disputes that were timely raised.  Accordingly, plaintiffs are not entitled to summary judgment on the grounds that Alliance's claims are barred by this provision, and their motion will not be granted on that basis either.

C.    Whether Alliance is a "Wholesale Sales Representative"

Section 1738.12 of the Wholesale Sales Representative Act defines a "wholesale sales representative" as "any person who contracts with a manufacturer, jobber, or distributor for the purpose of soliciting wholesale orders, is compensated, in whole or part, by commission[.]"  Cal. Civ. Code § 1738.12(e). "Wholesale" generally means sales of a larger "quantity usually for resale (as by a retail merchant)," and is understood to be the opposite of "retail," which is the sale of smaller quantities directly to consumers.  Reilly v. Inquest Tech., Inc., 218 Cal. App. 4th 536, 160 Cal. Rptr. 3d 236 (2013).  It is undisputed

that all relevant orders here were wholesale orders.

Plaintiffs argue that Alliance does not qualify as a wholesale sales representative because Alliance's contractual duties are tangential to direct order-taking and fall outside the Act's scope.  (Docket No. 83 at 13-14.)  Alliance argues that the phrase "for the purpose of soliciting wholesale orders" reaches commercial services more broadly and encompasses Alliance's obligations per the agreements.  (Docket No. 70 at 14-21.)

Nowhere in the agreements is the phrase "soliciting wholesale orders" used.  (Docket No. 73 at 28.)  The agreements provide that Alliance "will represent [BPF's] product line to distributors and retailers," and ties Alliance's compensation to a 3% commission, which suggests Alliance's role was a sales representative facilitating transactions.  (Docket No. 54-3 at 3.)  At the same time, the agreement routes all sales orders directly to plaintiffs "via EDI [electronic data interchange], email, or fax," with plaintiffs exclusively handling order approval, revisions, shipment availability, and delivery appointments.  (Id. at 4.)  This provision removes Alliance from the order-placement and fulfillment processes and thus supports plaintiffs' characterization of Alliance as a promotional and administrative services provider with no operative role in the order process.  Taken together, these provisions create a tension within the contract as to Alliance's role.

The agreements are therefore ambiguous as to whether Alliance was contracted "for the purpose of soliciting wholesale orders," and where contractual language is ambiguous and the parties have offered extrinsic evidence bearing on its meaning,

7

the court considers that evidence to ascertain intent.  See Thomson, 150 F.4th at 1103; Cal. Com. Code § 1303(a).  If interpretation depends on the credibility of the conflicting evidence, then the interpretative question cannot be resolved as a matter of law at summary judgment.  City of Hope, 43 Cal. 4th at 395.

The record of Alliance's actual performance presents competing evidence.  Alliance has produced evidence demonstrating occasional visits and pitches to buyers.  (Docket No. 70 at 3-4, 19-21.)  However, that Alliance may have incidentally performed activities resembling order solicitation does not necessarily qualify them as a wholesale sales representative as a matter of law.  The Act's usage of "the purpose" as opposed to "a purpose" suggests the statute was intended to protect sales representatives whose principal or primary purpose was direct order solicitation.  Cf. Madain v. BMW of N. Am., LLC, No. 20-cv-0038 JAK, 2020 WL 13250489, at *5 (C.D. Cal. Dec. 23, 2020) ("The use of the term 'a' instead of 'the' supports the view that the entry and terms of a contract can be motivated by more than one purpose.")

Plaintiffs, in contrast, have produced evidence emphasizing the promotional aspects of Alliance's role:  they point to deposition testimony establishing that Alliance was responsible for analyzing promotional spending and for submitting promotions that plaintiffs had created.  (Nguyen Decl., Ex. 4, at 88-93; SUF ¶ 16.)  Under plaintiffs' account, Alliance's function was to evaluate and transmit promotional decisions rather than to solicit purchasing commitments.  Additional evidence from

Alliance's own representatives is consistent with that account: when asked to describe its performance, Alliance described coordinating meetings between plaintiffs and retailers or promotional activity rather than explicit sales or order solicitation.  (Docket No. 54-2 Ex. 6.)

Because the agreements are ambiguous as to Alliance's purpose and the extrinsic evidence of Alliance's performance is in conflict, the court cannot determine as a matter of law that Alliance qualifies as a wholesale sales representative under the Act.  City of Hope, 43 Cal. 4th at 395.  Accordingly, the court will not grant summary judgment in favor of plaintiffs, or in favor of Alliance, on the issue of whether Alliance was a wholesale sales representative.

D.   Willfulness Under the Act

Alliance also asks the court to find that plaintiffs willfully failed to pay commissions and provide documentation in violation of the Act.  Section 1738.15 of the Act states that "[a] manufacturer, jobber, or distributor who . . . willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action for treble the damages proved at trial."  Cal. Civ. Code. § 1738.15.

The existence of a good-faith and reasonable belief that the facts imposing the Act's obligations were not present may defeat willfulness.  Elia v. Roberts, No. 1:16-cv-0557 AWI EPG, 2018 WL 4849653, at *4 (E.D. Cal. Oct. 4, 2018).  "For example, a failure to comply would not be willful if the manufacturer reasonably and in good faith believed that a person did not qualify as a 'wholesale sales representative' within the

meaning of the Act." Id. at *4. Willfulness has been deemed a "factual determination[] that must be made by a jury rather than the court." Id. at *5.

Plaintiffs argue that a finding of willfulness is negated by two good faith beliefs: that Alliance was not a wholesale sales representative, and that plaintiffs were not required to make the final payments because of Alliance's prior material breach. (Docket No. 73 at 25-26.)

The court has already concluded that the question of Alliance's qualification as a wholesale sales representative is uncertain at this juncture, which bolsters plaintiffs' assertion that they reasonably believed the Act may not apply. And as explained below, the basis of plaintiffs' second belief -- that the August through October 2023 commissions were not owed because of Alliance's prior material breach -- remains an open question. The court cannot therefore conclude as a matter of law that plaintiffs willfully violated the Act, and Alliance's request for summary adjudication on this issue must fail.

E.   The Breach Claims

i.   Which Party Materially Breached First

"Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach." Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (Karlton, J.).

"When a party's failure to perform a contractual

10

obligation constitutes a material breach . . . the other party may be discharged from its duty to perform[.]" Brown v. Grimes, 192 Cal. App. 4th 265, 277, (4th Dist. 2011).  Whether a breach is material depends on "the importance or seriousness thereof and the probability of the injured party getting substantial performance."  Id. at 278.  Materiality of breach may only be resolved as a matter of law "if reasonable minds cannot differ on the issue[.]"  Brown, 192 Cal. App. 4th at 277-78.

Alliance argues that plaintiffs' failures to timely make payments and provide backup documentation throughout the parties' commercial relationship constituted material breaches, which excused Alliance's subsequent performance.  (See Docket No. 62 at 23-24.)  Alliance then argues that plaintiffs' failure to pay their final three commissions constituted a second material breach.  (Id. at 20.)  Plaintiffs argue that their first purported material breaches were immaterial or, alternatively, waived by Alliance's continued performance; their second material breach, plaintiffs argue, was excused by Alliance's material breaches.  (Docket No. 73 at 11.)

The evidence does not support a finding that plaintiffs' failure to make timely payments constituted a material breach that excused Alliance's subsequent performance. If a contract does not contain a "time is of the essence" clause, "the number and amount of late payments does not, by itself, decide the issue of materiality."  Urica, Inc. v. Pharmaplast S.A.E., No. 11-cv-02476 MMM RZX, 2013 WL 12123230, at *7 (C.D. Cal. May 6, 2013); see also, McLellan v. Fitbit, Inc., No. 3:16-cv-00036-JD, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018)

("Aside from a special circumstance where the contract specifies that time is of the essence, a short delay in performance typically does not result in a material breach excusing the other side from its obligations.").

But even assuming plaintiffs' late payments were material, Alliance waived its right to treat them as such through its continued performance.  "Waiver is the intentional relinquishment of a known right after knowledge of the facts," and "may be either express . . . or implied, based on conduct indicating an intent to relinquish the right."  Waller v. Truck Insurance Exchange, Inc., 11 Cal.4th 1, 31 (1995).  "Accepting a late or insufficient payment is an affirmation of the contract, and the right to rescind the contract for material breach may be waived by this conduct."  World Mix Ent., Ltd. v. Bone Thugs Harmony, Inc., No. 07-cv-02159 DDP, 2009 WL 10671949, at *4 (C.D. Cal. Mar. 3, 2009).

It is undisputed that the agreements at issue do not contain a "time is of the essence" clause.  It is also undisputed that Alliance eventually received and accepted all requested payments and backup documentation, continued doing business with plaintiffs for years despite what Alliance now claims were material breaches, and signed an identical contract with R&M five years into the BPF relationship.  Based on these undisputed facts, Alliance is not entitled to treat plaintiffs' late payments as material breaches that excused Alliance's subsequent performance.  See Urica, Inc. v. Pharmaplast S.A.E., No. 11-cv-02476 MMM, 2013 WL 12123230, at *8 (C.D. Cal. May 6, 2013) ("Given the absence of [a 'time is of the essence'] provision . .

. [and] the fact that [defendant] consistently accepted late payments . . . the court cannot [determine materiality] as a matter of law."). Alliance was therefore not excused from its contractual obligations.

None of the parties have moved for summary judgment on the issue of whether Alliance materially breached the contract. In response to plaintiffs' allegations of Alliance's breaches (Docket No. 73 at 24-27), Alliance states only that the breaches "occurred when Plaintiffs were first in breach" for their late payments, thus excusing Alliance's performance. (Docket No. 84 at 12.) The court has now rejected that premise. Beyond it, Alliance offers nothing to negate the breaches plaintiffs allege, stating only that it "strongly disputes" that they occurred. (Docket No. 84 at 12.) Alliance accordingly is not entitled to summary judgment on plaintiffs' breach claim or its counterclaim.

ii. Causation

Alliance alternatively argues that plaintiffs cannot establish that any purported breach by Alliance caused their losses. (Docket No. 62 at 29.) Causation of contract damages is assessed using the substantial factor standard, which requires "something that is more than a slight, trivial, negligible, or theoretical factor in producing a particular result." Haley v. Casa Del Rey Homeowners Assn., 153 Cal. App. 4th 863, 871-72 (2007). Substantial-factor causation may exist even where other concurrent factors contribute to the loss and is "ordinarily a question of fact." See Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc., 36 Cal. App. 5th 766, 792 (2019).

13

Alliance argues that plaintiffs' purported losses are tied to the purchasing decisions of third-party grocers and distributors and identifies a series of independent factors it contends drove plaintiffs' decline in sales. (Docket No. 62 at 29-32.) In response, plaintiffs offer evidence that Alliance failed to provide in-depth business review and category preparation services in advance of a major grocer's annual category review and failed to inform plaintiffs of contemporaneous developments with that grocer's distribution partner that bore directly on plaintiffs' submission. (Nguyen Decl., Ex. 4.) Alliance also failed entirely, on several occasions, to submit promotions that plaintiffs had prepared, despite Alliance's CEO conceding at deposition that promotions ordinarily produce measurable increases in sales volume. (Nguyen Decl., Exs. 4, 20, 21.)

Plaintiffs have presented sufficient evidence that Alliance's alleged failures were substantial factors in causing their losses, even accepting Alliance's evidence of concurrent contributing causes. The categories of nonperformance plaintiffs identify track Alliance's contractual duties, and they correspond to commercial outcomes within the period plaintiffs have placed at issue. Whether those failures rose to the level of substantial factors, given the concurrent causes Alliance identifies, requires weighing the relative contribution of each cause; that weighing is for the trier of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge.").

Because the court cannot conclude as a matter of law that Alliance's alleged failures were not substantial factors in plaintiffs' losses, Alliance is not entitled to summary judgment on the issue of causation.

IT IS THEREFORE ORDERED that the parties' motions for partial summary judgment (Docket Nos. 54, 57, 62) be, and the same hereby are, DENIED.

IT IS FURTHER ORDERED that the parties' motions to exclude (Docket Nos. 59, 63) be, and the same hereby are, DENIED without prejudice.

Dated:  May 29, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15